## HOLEMAN v. NATURAL SODA PRODUCTS CO.

## LAUGHARN et al. v. SCOTT et al.

## In re WATTERSON BROS.' ESTATE.
### No. 8705.

Circuit Court of Appeals, Ninth Circuit.
April 25, 1938.

Clock, McWhinney & Clock, of Long Beach, Cal., and Grainger & Hunt, of Los Angeles, Cal., for appellant.

278

Gibson, Dunn & Crutcher, Henry F. Prince, Henry B. Ely, and J. Stuart Neary, all of Los Angeles, Cal., for appellee Gibson, Dunn & Crutcher.

W. I. Titus, of Los Angeles, Cal., for appellee Scott.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This appeal involves creditors' objections to the District Court's approval of the final account of David B. Scott, equity receiver of an insolvent corporation, Natural Soda Products Company.

There is no evidence in the record. The appeal concerns only matters of law as applied to the facts found by the court. Those facts are as follows:

An action against the Soda Products Company was commenced in 1927 and appellee receiver appointed by an order which recited:

"It is further order that until the further Order of this Court said Receiver is further authorized to take immediate and full possession of all property and assets of every kind belonging to said Defendant, or to which said Defendant may become entitled for the purpose of managing and operating the business of said Defendant; that said Receiver shall continue to conduct the business of the Defendant Corporation, as he to his best discretion may find proper and as authorized by the Court and that said Receiver do any and all things necessary and proper to preserve and protect the property, business, and assets of the Defendant Corporation, with full power to employ and discharge all managers, officers, employees, and servants thereof; that said Receiver may incur such expenses, and may make such demands as may be necessary to properly manage and operate said business, and to continue the same. Said Receiver is further authorized to petition for authority of this Court, with or without notice to issue Receiver's Certificates conferring all first and prior liens on all of the property and assets of the Defendant Corporation, for the purpose of securing existing debts, debts of Receiver, for paying matured or maturing claims of the Defendant, to borrow for payrolls, materials, and expense necessary to continue the business of Defendant Corporation, to sell products thereof for cash, or on credit, and to contract the sale of said products."

It is the contention of creditors, appellants here, that he mismanaged the business so grossly that he is chargeable with a particular loss sustained.

In his first reports, the receiver showed that the company was in good condition. Its assets totalled upward of $810,000. Secured claims of creditors came up to about $270,000, and there were and are general unsecured creditors holding claims totalling $400,000.

The receiver carried on the business (manufacture and sale of soda ash) under the general order of the court from 1927 to 1932. Severe losses and shrinkage in the value of assets took place during the depression. In 1932 the court confirmed a sale of the entire assets to one Miller, or a corporation formed by him, for $30,000 in cash, plus certain arrangements whereby secured creditors received preferred stock in the corporation formed to take over the assets. Taking this $30,000 plus other moneys derived from the operation of the business, and subtracting receiver's and counsel's compensation, there remained, when the final report was confirmed in 1936, the sum of $3,000 to distribute among $400,000 worth of creditors.

In 1930, while carrying on the business of the company, the receiver had occasion to purchase supplies of limestone rock from the Inyo Marble Company. He found the grade of the material poor and the cost too high. Thereupon he commenced purchasing rock from one Fred Ward and later Ward and Wright, a partnership. Inyo Marble Company notified the receiver that the rock he was getting from Ward and Wright was being taken from Inyo's property, and that Inyo Company would hold him liable for it.

The receiver did not report this situation to the court, but made an extensive and thorough investigation himself and, with due prudence and caution, determined that Ward and Wright had the title to the property from which he was purchasing rock, and that Inyo's claim was groundless. So he continued to take rock from Ward and Wright.

In 1931 the Inyo Company commenced suit against the receiver for about $30,000, the alleged value of the rock he had purchased from Ward and Wright. The commencement of this suit was the first notice the court had as to the conflicting claims and the receiver's decision. With the permission of the court, the receiver retained

the law firm of Gibson, Dunn & Crutcher to defend the Inyo suit. That firm, during the progress of the trial, advised the receiver that, while he had a good defense, the Inyo Company was likely to win due to the death or disappearance of witnesses. The lawyers advised a settlement by payment of $12,500 to the Inyo Company. This settlement was approved by the Inyo Company and the receiver, and confirmed by the District Court in this receivership.

Thirty-five hundred dollars was allowed by the court to Gibson, Dunn & Crutcher, for their services and expenses in connection with the Inyo suit.

It is the claim of the appellants here that the receiver should be personally charged with the amount of the settlement and the attorneys' fees. They assert that he exceeded his authority in purchasing the rock from parties whose title was contested, without first consulting the court. They argue that, had the court been apprised of this situation in 1930, it would have proceeded at once to liquidate the estate and would not have permitted the receiver to make the purchases of rock which led to the Inyo suit.

There is no merit in the appeal.

A receiver is held to a standard of ordinary prudence. He is subject to the control of the court, but, under the general powers here given him, he is not required to consult the court on every prospective deal. It is difficult to conceive that a going business of the size and complexity of that of this company may be successfully operated with the manager's initiative so hampered. Since there can be no attack on the finding that the receiver acted with due diligence and care in making purchases from Wright and Ward, it cannot be said as a matter of law that he was negligent or guilty of misfeasance in failing to get the court's approval.

Furthermore, the appellants cannot show that the court would not have approved the receiver's action had he advised the court of it. Inasmuch as his decision to purchase from Wright and Ward was a careful and prudential one, the presumption is that the court would have confirmed it, instead of, as the appellants argue, directing an immediate liquidation of the estate.

Further, the appellants cannot show from this record that they would be better off if the estate had been liquidated in 1930, at the time the receiver commenced these rock purchases. It is true the record shows at that time the receiver had $30,000 in free cash, being an income tax refund from the government, and it is argued that this sum, at least, would have been distributable among the creditors and they would have more than they are now getting with only a paltry $3,000. The record, however, does not bear out the argument. There is no showing as to whether or not there might have been priorities or receivership expenses that would have eaten up this $30,000 if the estate had been liquidated in 1930.

Affirmed.